IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.15-cr-245-WJM

UNITED STATES OF AMERICA,
    Plaintiff,

v.

2.    JORDAIN LARSEN,
    Defendant.

---

**DEFENDANT'S MOTION FOR SENTENCE TO 240 MONTHS IN BOP
PURSUANT TO 18 U.SC. § 3553(a)**

---

Pursuant to 18 U.S.C. § 3553(a), Ms. Larsen respectfully requests this Court sentence her to 240 months in the Federal Bureau of Prisons for her involvement in the present case. 240 months, or 20 years, is sufficient but not greater than necessary to comply with the purposes of sentencing as established in 18 U.S.C. § 3553(a)(2).

### Procedural & Legal Framework

Ms. Larsen pled guilty to three counts of Production of Child Pornography and Aiding and Abetting pursuant to 18 U.S.C. § 2251A and 2. Each count carries a mandatory minimum sentence of 15 years, or 180 months. The counts can be run concurrently or consecutively. Thus, the sentencing range available to this Court is 15 to 90 years in prison (180 – 1,260 months).

The United States Sentencing Guidelines suggest this Court sentence Ms. Larsen to a life sentence, which is limited by the statutory maximum of 90 years or

1,260 months in prison. The probation department agrees with the Guideline suggestion and is advocating that Ms. Larsen be sentenced to 1,260 months (90 years).

This Court's duty is to impose a sentence "sufficient, but not greater than necessary," to accomplish the goals of sentencing set out 18 U.S.C. § 3553(a). Indeed, the Court is still required to consider the Sentencing Guidelines but is permitted to "tailor the sentence in light of other statutory concerns" and may find that the "Guidelines sentence itself fails to properly reflect 18 U.S.C. § 3553(a) factors. *Kimbrough v. United States,* 552 U.S. 85, 102 *(2007) citing United States v. Booker,* 543 U.S. 220 (2005)*; Gall v. United States,* 552 U.S. 38 (2007).

### *Rejection of United States Sentencing Guidelines*

Ms. Larsen requests this Court reject the life sentence calculated by the Guidelines and sentence her in light of other statutory factors. Ms. Larsen does not object to the calculations contained in the pre-sentence report -- the calculations are an accurate application of the Guidelines. However, this case demonstrates the absurdity of the Sentencing Guidelines. The calculated offense level here is 56. That means her offense level is **13 points above** the highest possible offense level that the United States Sentencing Guidelines contemplates – the sentencing table ends at offense level 43. All offense levels of 43 are "life."

Ms. Larsen's offense level begins with a base offense level of 32 for a conviction that is for production of child pornography. The Guidelines then ratchet the offense level up by adding specific offense characteristics that are, in most cases, redundant. For example, every conviction for production of child pornography necessarily includes a sexual act, yet 2G2.1(b)(2)(A) adds two points for an offense that involves a sexual

act.  Likewise, where a computer is used, another two points are added. 2G2.1(b)(2)(A).  Yet another two points are added for "distribution," yet the distribution in this case was between only Ms. Larsen and her co-defendant.  The end result is the offense level of 56.

By way of comparison, had Ms. Larsen planned and intentionally killed another human being, her offense level would be 13 points lower than in the present case. 2A1.1 (Offense level for first-degree murder is 43).  Similarly, if Ms. Larsen would have committed second-degree murder, or knowingly killed someone, the offense level would be a 38 – or 18 points lower than in the current offense and the Guidelines would recommend just a sentence of 235-293 instead of life.[1]

18 U.S.C. § 3553(a) provides: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. . . and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

---

[1] Ms. Larsen is in fact requesting a sentence from this Court that would be within the Sentencing Guideline range had she knowingly killed someone and been convicted of second-degree murder.

3

## History & Characteristics of Jordain Larsen

With respect to the nature and circumstances of the offense and history and characteristics of Ms. Larsen, Dr. Nicole Schneider prepared a thorough, 25-page Psychological Assessment that is attached to the PSIR for the court's review. Below, particularly relevant sections are highlighted.

*"Ms. Larsen has had a traumatic childhood in which her parents fought frequently, her father was unfaithful, and she was the recipient of physical, verbal and emotional abuse. She was also picked on, bullied, and harassed for years in school . . . She grew up feeling as though she was a burden and unlovable. Those scars remained throughout her dating years and her romantic relationships were fraught with insecurity, exploitation of her and a loss of self-identity."* – Schneider Report p.20

Ms. Larsen is twenty-seven years old, with no criminal history. She was the single mother of two young children, each from a different abusive and broken relationship. Her whole life she was bullied and called names like "fat." At thirteen her uncle sexually molested her and later that year she attempted suicide. Her parents were involved in and very focused on their own personal struggles, putting Ms. Larsen, at a young age, between them. Her father physically abused her; sometimes leaving welts while her mother would go to the garage and smoke cigarettes. As a teenager, the bullying she suffered at school became sexual in nature. Ms. Larsen also suffered multiple miscarriages as a teenager and ultimately dropped out of high school in 11th grade. Mental illness runs in her family, her mother has been treated for depression throughout her life and her father – while he did not speak with the probation office or defense counsel – has struggled with mental health issues. Ms. Larsen continues to have thoughts of suicide and while initially in custody was held on "suicide watch."

Her mother describes Ms. Larsen as "always wanted to be loved" and "desperate to have a man in her life." PSIR § 109.

As a result of this case, Ms. Larsen has lost custody of her children. She is not permitted to contact them. While it is understandably hard to reconcile with the facts of the case[2], when asked what Ms. Larsen was most proud of in her life, her response was her children and her role as their mother. She desperately wanted to provide for her children and create a loving home for them.

### Nature & Circumstances of the Offense

*"Ms. Larsen was so desperate to be loved and praised that she ultimately became convinced that it was the best thing for her children to have a father figure . . . The combination of her low level of education, history of abuse and trauma, deeply wounded sense of self-worth, and desperation for validation all came together to promote her willingness to go along with Mr. Holt's desires . . . It is my opinion that Ms. Larsen never set out to harm her children. She never planned and premeditated a way for them to be harmed. . . With her history of depression, victimization and belief that she was unworthy and unlovable, in combination with the fun, caring and devoted acts Mr. Holt showed her and the children, Ms. Larsen became convinced that the children were happy. . ."* – Dr. Schneider, pp. 20-22.

There is no doubt that the nature and circumstances of this case and Ms. Larsen's involvement are horrific. Undeniably, Ms. Larsen participated in abuse of her own children and nephew and the effects of that abuse will impact those children and Ms. Larsen's family forever. However, had Matthew Holt never existed or come into Ms. Larsen's life – this offense would not have happened with Ms. Larsen and the children in this case.

---

[2] Dr. Schneider notes in her report: "It is important to point out that many people make decisions on a daily basis that are not in the best interest of their children. For example, many parents struggle with severe substance abuse and dependency issues that end up placing their children in harm's way or exploited or having their children removed from the home. . . . While these situations are undeniably sad, their existence does not mean that those parents do not love their children. It means there is a story there to understand . . ." p. 21.

5

The therapist at the Clear Creek County Jail commented to Dr. Schneider that it was pretty clear Ms. Larsen was "an easy target and he [Mr. Holt] probably figured that out over the phone and internet and emails." *Dr. Schneider,* p. 18.

## **240 Months Accomplishes the Purposes of Sentencing and Avoids Unwarranted Sentencing Disparities**

When contemplating the appropriate sentence for Ms. Larsen that is sufficient but not greater than necessary, but also promotes respect for the law, provides just punishment and avoids unwarranted sentencing disparities, 240 months accomplishes these objectives.

In arriving at the request of 240 months, counsel researched cases in the District of Colorado and nationally for § 2251A convictions. Unfortunately, there is a great range of cases: more egregious facts that resulted in lesser sentences and conversely, less egregious facts that resulted in greater sentences.

To narrow the focus, there are two cases that are most instructive because the facts are somewhat similar and occurred before this Court: (1) *United States v. Jesse Evans,* 12-cr-325-WJM, the defendant was sentenced to 252 months (21 years); and (2) *United States v. Mueller,* 11-cr-339-WJM, the defendant was sentenced to 480 months (40 years).

In the *Evans* case, the defendant sexually exploited his two-year-old and six-year old daughters for a period of two years on multiple occasions and videotaped the exploitations. The defendant also had approximately 5,000 images of child pornography. The prosecution in that case advocated for a sentence of thirty years and asserted that the defendant was "the worst of the worst." *Transcript, 6/6/14 at p. 161.*

6

In *Mueller*, the factual stipulation was sealed and is not publically available but the defendant produced videos of his family engaging in sexual acts, of his children/minors and distributed this on the Internet with the purpose of creating a market for this product. *Evans transcript at p. 147*. This Court sentenced the defendant to 360 years for the § 2251A conduct and added another 120 years consecutive to that for the transportation of child pornography. *Evans Transcript at p. 164 (13, 14).* The Court and the prosecution agreed the facts of the *Mueller* case were far worse than the facts in the *Evans* case.

The facts in this case as they relate to Ms. Larsen are significantly more similar to the facts in the *Evans* case than the *Mueller* case. Ms. Larsen did produce sexually exploitative materials of her son and sent them to her co-defendant and no one else. The exploitation she perpetrated was touching – as opposed to penetration or rape. Ms. Larsen then aided and abetted her co-defendant in the more violent exploitation of her son. The fact that Ms. Larsen's son was very young can definitely be viewed as aggravating, but on the other hand it is likely he will not remember this abuse because of his young age – different than the situation of children who will always have memories of the abuse.

### Future Risk of Danger to Public

Another unique aspect to Ms. Larsen's case is that she is not a pedophile and did not seek out this experience for her own sexual interest, but rather to gain the attention of a man who had this sexual interest. Ms. Larsen does not present a future risk of danger to the public in the way a pedophile would. "There is nothing indicating that this defendant has had or currently has any sexual interest in juveniles." *Dr. Schneider, p.*

7

*22*.  Ms. Larsen did not possess a collection of child pornography.  Clearly, Ms. Larsen failed to protect her children and used her son as a way to get what she wanted from a man, which is terrible but presents a different risk, especially since even if given the mandatory minimum in this case, Ms. Larsen's children will be adults by the time she is ever released from prison.

Significantly, the Guardian Ad Litem for the children provided a letter to the court that is included as part of the PSIR.  In that letter, attorney Kris D. W. Ferrell request Ms. Larsen not be released until her children are over 18.  Ms. Larsen agrees that is appropriate given the circumstances of this case.

### Remorse & Commitment to Treatment

For the first several months Ms. Larsen was in custody, she was unable to speak about the present case because she would become very upset to the point of being ill and incapacitated. There are not words that can express how strong her remorse is in this case.

Ms. Heck at the Clear Creek jail noted that Ms. Larsen was "highly motivated to come to therapy and she wanted to understand how she got into this relationship and allowed a man to take advantage of her and the children." *Dr. Schneider,* p. 18.  Notes from the Douglas County Jail indicated she has "been in counseling and expressed a desire to heal and change."  *Id.*  Ms. Larsen has been an active participant in Change for Good group at the jail.  A jail therapist noted, "She is also reading a book on processing emotions.  She is reflecting and looking inward and already has made tremendous strides." *Id. at 19*.

Ms. Larsen is having a very difficult time dealing with the collateral consequences of her actions in this case. Not only is she facing a significant prison sentence, she truly understands that she hurt and allowed for her children to be hurt in an awful way and she is and likely will be dealing with that pain forever. Ms. Larsen has also lost the trust and relationships with all of her family. She has had almost no contact with them since the day of her arrest. She understands and accepts their anger. Worst of all for Ms. Larsen is dealing with the loss that she will not see or have any contact with her children again and that she can no longer be their mother. She recognizes she created this situation, that not only did she hurt her children but also she took away their right to have a mother. The pain of the whole situation overwhelms her.

Despite this, Ms. Larsen has turned her attention to try and heal the best ways she can. During the pendency of this case, she has been studying for and recently passed her GED. She also spends extensive time periods studying and thinking about the concepts she is learning in the therapy offered at the jail. For example, at a recent visit with counsel, Ms. Larsen shared some of her personal work. She received a list of personal characteristics from a therapist, such as "sincere," "caring," "extroverted," and looked up the definitions of the words she did not understand. She then created a chart for herself where she assessed whether each characteristic was positive, negative, something she used to be, or something she was going to work toward being.

## Conclusion

9

After consideration of the history and characteristics as well as the nature and circumstances of her offense, Ms. Larsen concedes she does not fall into the "mandatory minimum" range of 180 months or 15 years.  Yet, given all of the above, a life sentence is also not warranted.  Within the ranges of the similar cases before this Court, Ms. Larsen's overall case presents slightly below that of the *Evans* case and therefore, to avoid unwarranted sentencing disparities as well as accomplish the goals of 18 U.S.C. § 3553(a), the sentence that is sufficient but not greater than necessary is 240 months.  Twenty years in prison is a severe sentence for anyone, but especially someone who has never been involved in the criminal justice system and was twenty-six years old at the time of the offense. Twenty years appropriately reflects the seriousness of this offense.

Respectfully submitted,

By: *s/Kathryn J. Stimson*
Kathryn J. Stimson
STIMSON GLOVER LLC
1800 15th Street Suite 101
Denver, CO 80202
(720) 644-8066
ks@stimsonglover.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2016, I electronically filed the foregoing Notice with the Clerk of Court using CM/ECF which will send notification of such filing to the following email addresses:

David Johnson, Assistant Federal Defender,   david.johnson@fd.org

Judith Smith, Assistant United States Attorney, Judith.smith3@usdoj.gov

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants via US Mail:  Ms. Jordain Larsen.

                                               *s/Kathryn J. Stimson*
                                               Kathryn J. Stimson
                                               STIMSON GLOVER LLC
                                               1800 15th Street Suite 101
                                               Denver, CO 80202
                                               (720) 644-8066
                                               ks@stimsonglover.com